UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEATHER LOUISE ISENBERG,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C12-2197-JLR-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Heather Louise Isenberg appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 28-year-old woman with a high-school education. Administrative Record ("AR") at 43, 203. Her past work experience includes employment as a retail cashier and fast-food cashier. AR at 197. Plaintiff was last gainfully employed in 2006. *Id.*

REPORT AND RECOMMENDATION - 1

On November 3, 2009, Plaintiff filed a claim for SSI payments. AR at 147-49. On November 20, 2009, she filed an application for DIB, alleging an onset date of April 1, 2007.[1] AR at 139-41. Plaintiff asserts that she is disabled due to bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and lower back pain with possible sciatica. AR at 196.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 68-82, 86-96. Plaintiff requested a hearing, which took place on August 30, 2011. AR at 38-63. On September 22, 2011, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 20-32. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 14, 2012, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to January 27, 2008. AR at 41.

REPORT AND RECOMMENDATION - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Ms. Isenberg bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

REPORT AND RECOMMENDATION - 3

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On September 22, 2011, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since January 27, 2008, the amended alleged onset date.

3. The claimant's depressive disorder, anxiety disorder, personality disorder, substance abuse, L4-5 disc protrusion, and obesity are severe impairments.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). The claimant is able to perform mental activities generally required by competitive, remunerative work involving the ability to understand, remember and carry out simple 1- to 2-step instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work. The claimant would have average or

REPORT AND RECOMMENDATION - 5

moderate ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence. The claimant can make judgments on simple work-related decisions and can respond appropriately to supervision, coworkers and deal with changes all within a stable work environment. The claimant should not deal with the general public as in a sales/cashier position or where the general public is frequently encountered as an essential element of the work process such as telemarketing. Incidental contact with the general public is not precluded so long as the public is not a part of the work process.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1983 and was 24 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date.[3]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 27, 2008, the amended alleged onset date, through the date of this decision.

AR at 22-32.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in discounting the opinions of Plaintiff's treating mental health providers.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

2. Whether the ALJ erred in failing to adequately address Plaintiff's obesity, as required by Social Security Ruling ("SSR") 02-lp.

3. Whether substantial evidence supports the ALJ's finding Plaintiff capable of performing work at the "light" exertional level.

4. Whether substantial evidence supports the ALJ's finding that Plaintiff's mental limitations did not preclude performance of simple work with incidental public contact.

5. Whether the ALJ erred in discounting Plaintiff's credibility.

Dkt. 16 at 2.

## VII.   DISCUSSION

A.   <u>The ALJ Did Not Err in Discounting Plaintiff's Credibility.</u>

The ALJ provided a number of reasons to discount Plaintiff's credibility, including inconsistent activities, inconsistent statements regarding capabilities and alcohol/drug use, and inconsistent medical evidence.  AR at 26-27.  Plaintiff challenges the ALJ's interpretation of her activities and statements as inconsistent, arguing that "[s]uch discrepancies or differences in interpretation are not sufficient in themselves, particularly given [her] documented memory, communication, and concentration difficulties, to render all of her testimony not credible."  Dkt. 16 at 16.

The ALJ did, however, identify some specific activities and statements that undermine her credibility.  *See Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.").  The ALJ noted that Plaintiff testified that she cannot focus or concentrate for any length of time due to pain and racing thoughts, yet at other times reported that she played video games "almost everyday" and

REPORT AND RECOMMENDATION - 7

watched movies or played on the computer all day long. AR at 48-51, 170, 590. The ALJ did not err in construing these statements to be inconsistent.

The ALJ also mentioned that Plaintiff provided inconsistent explanations as to why her last job ended: she told an examining physician that her last job ended because her employer went out of business, but also stated that she quit because she "could not handle it." AR at 604, 605. She also told this same examining physician that she *can* shop for groceries, but simply does not like to. AR at 605. Furthermore, she told an examining physician in February 2010 that she smoked cigarettes but denied the use of any other drugs, and told an examining physician in March 2010 that she had never used "street drugs," even though she also testified that she used marijuana, methamphetamines, and heroin until January 27, 2008. *See* AR 54-55, 591, 605. The ALJ did not err in construing these statements to be inconsistent.

Furthermore, the ALJ cited medical evidence undermining Plaintiff's complaints of severe limitations as to walking, sitting, bending, and twisting: an examining physician observed Plaintiff walking without assistance, sitting comfortably, and taking her shoes off and putting them back on without difficulty. AR at 591. The doctor also noted that Plaintiff could hop and squat without difficulty. *Compare* AR at 592 *with* AR at 180 (Plaintiff self-reporting a squatting limitation).

Because the ALJ's adverse credibility finding is supported by these inconsistencies, it should be affirmed.

B.    The ALJ Did Not Err in Assessing Medical Opinions Regarding Mental Functioning.

Plaintiff challenges the ALJ's assessment of opinions provided by four medical providers: examining psychologist Kimberly Wheeler, Ph.D.; consultative examiner Jesse McClelland, M.D.; consultative examiner Linda McNellis, MSW, LICSW; and treating counselor June Tanner, MHP. According to Plaintiff, the ALJ did not provide sufficient

REPORT AND RECOMMENDATION - 8

reasons to discount these opinions.[4] An ALJ must provide specific and legitimate reasons to discount a contradicted acceptable medical source opinion, and germane reasons to discount an opinion provided by a non-acceptable medical source. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Court will address each provider's opinion in turn.

        1.    *Drs. Wheeler & McClelland*

Dr. Wheeler performed a consultative examination of Plaintiff in October 2008. *See* AR at 676-81. The ALJ provided two reasons to afford only little weight to Dr. Wheeler's opinion: internal inconsistencies between Dr. Wheeler's conclusions and her findings on mental status examination, and inconsistencies between Dr. Wheeler's conclusions and Dr. McClelland's opinion. AR at 27.

Plaintiff's point regarding the mental status examination findings is well-taken — the Court is not persuaded that Plaintiff's presentation as alert, cooperative, making eye contact, in a good mood, and with a full affect can be reasonably construed as inconsistent with Dr. Wheeler's opinions regarding cognitive and social limitations — but the ALJ did not err in construing Dr. McClelland's opinion as inconsistent with Dr. Wheeler's opinion. Dr. McClelland found Plaintiff to have linear, goal-directed thought processes, while Dr. Wheeler found her to have tangential, pressured, and derailed thought processes. *Compare* AR at 606 *with* AR at 680. Dr. McClelland also found that Plaintiff had no difficulty performing a three-step command, while Dr. Wheeler indicated that Plaintiff had "severe" limitations following

---

[4] Plaintiff reiterates the same arguments made in this section when arguing that the ALJ should not have credited the opinions of State agency psychological consultants over the opinions of Drs. Wheeler and McClelland, and Ms. McNellis and Ms. Tanner. Dkt. 16 at 13-15. But as explained in this section, the ALJ provided sufficient reasons to discount those providers' opinions, and thus Plaintiff has failed to establish that the ALJ erred in crediting the State agency opinions.

REPORT AND RECOMMENDATION - 9

instructions with more than two steps. *Compare* AR at 606 *with* AR at 678. The ALJ properly concluded that the inconsistencies between these opinions undermine the value of Dr. Wheeler's opinion. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (indicating that a treating physician's opinion can be discounted where it conflicts with the opinion of a consultative examiner).

The ALJ also properly noted that Dr. McClelland's findings did not support his conclusion that Plaintiff was unable to perform even simple and repetitive work activities on a routine basis, due to her erratic behavior and mood swings. AR at 28 (citing AR at 607). Dr. McClelland reported essentially unremarkable objective findings (AR at 606-07), yet concluded that Plaintiff could not work on a routine basis due to social limitations, deficits in managing stress, and mood swings (AR at 607). Because Dr. McClelland did not explain the basis for those conclusions, and the findings he did provide do not support his conclusions, the ALJ was entitled to discount his opinion. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

2. *Ms. McNellis*

Ms. McNellis performed a DSHS psychological evaluation of Plaintiff in May 2009. AR at 822-31. The ALJ assigned little weight to Ms. McNellis's opinion because *inter alia* her findings were inconsistent with Dr. McClelland's, and because her opinion was inconsistent with Plaintiff's reported daily activities. AR at 29.

Both of these reasons are germane. Plaintiff herself acknowledges that inconsistency with other medical evidence is a legitimate reason to discredit an opinion (Dkt. 16 at 8), and although she disputes whether Ms. McNellis's opinion is actually inconsistent with Dr. McClelland's, she overlooks the discrepancies between their findings regarding capabilities in

REPORT AND RECOMMENDATION - 10

following instructions (AR at 606-07, 825). The ALJ also pointed out how Ms. McNellis's opinions regarding Plaintiff's social functioning were inconsistent with her reported daily social interactions. AR at 170, 825. Because the ALJ provided reasons germane to Ms. McNellis's opinion to discount the weight assigned to it, the ALJ's assessment should be affirmed.

      3.    *Ms. Tanner*

The ALJ gave little weight to the three assessments completed by Ms. Tanner (AR 682-86, 817-21, 832-36), on the grounds that they were inconsistent with unremarkable findings on mental status examinations and relied on Plaintiff's non-credible self-report. AR at 29-30. The ALJ also noted that Ms. Tanner indicated that Plaintiff had experienced three episodes of decompensation, each of extended duration, even though no mention of such episodes exists elsewhere in the record. AR at 30.

These are germane reasons to discount Ms. Tanner's opinions. Ms. Tanner's form opinions leave many requests for explanation blank, and thus the discrepancies between her opinions and the mental status examination findings are unexplained. AR at 817-21, 832-36. She also appeared to rely on Plaintiff's self-reported problems in interacting with other people. *See, e.g.*, AR at 833 (Ms. Tanner's note that she did not observe Plaintiff's anxiety, but that Plaintiff reported that it caused her marked limitations in social interaction). Finally, Plaintiff does not challenge the ALJ's finding that Ms. Tanner inaccurately noted that Plaintiff had experienced three episodes of decompensation. Dkt. 16 at 9-10. Thus, because all three of the ALJ's reasons to discount Ms. Tanner's opinions are germane, his assessment should be affirmed.

C.    <u>The ALJ Erred in Assessing Plaintiff's Physical Limitations.</u>

Plaintiff assigns error to the ALJ's assessment of the effect of her obesity and her back

REPORT AND RECOMMENDATION - 11

condition on her ability to work.  Specifically, Plaintiff argues that the ALJ did not fully account for all limitations caused by her obesity, and that he relied on outdated evidence in assessing her back condition while failing to address evidence showing that her condition had deteriorated.  Dkt. 16 at 11-13.

First turning to consider obesity, Plaintiff has not shown that the ALJ erred with respect to her obesity.  The ALJ found that Plaintiff's obesity and L4-5 disc protusion, among other conditions, were severe impairments.  AR at 22.  The ALJ was not required to assume that Plaintiff's obesity caused any particular limitation, and Plaintiff has failed to establish that her obesity did, in fact, caused any limitation or exacerbated any other condition.  *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005).  Although Plaintiff cites to medical notes observing that she is obese and that her lower-back condition caused her to ambulate slowly and experience radiating pain (Dkt. 16 at 11 (citing AR at 591, 729-54, 778)), none of that evidence establishes the existence of obesity-related limitations not addressed by the ALJ.

But as to Plaintiff's back condition, the ALJ did err in failing to account for limitations identified by Teresa Wolber, ARNP, without sufficient explanation.  Ms. Wolber indicated that Plaintiff's back condition was deteriorating, and that she could stand for two hours and sit for two hours during an eight-hour workday.  AR at 803-04.  Although the ALJ assigned "great weight and consideration" to Ms. Wolber's opinion (AR at 29), he apparently overlooked the portion of her opinion regarding Plaintiff's limited ability to sit and stand, because those opinions are inconsistent with his RFC assessment.  *See* AR at 24 (finding Plaintiff capable of light work).  The Commissioner argues that Ms. Wolber's opinion is not significant or probative (Dkt. 18 at 15), because she indicated that her opinion was limited in duration (2-6 months), and thus need not be considered by the ALJ; she fails to appreciate that the ALJ *did* consider the opinion and asserted that it was entitled to great weight, but failed to explained the

REPORT AND RECOMMENDATION - 12

discrepancy between Ms. Wolber's opinion and his RFC assessment. While reasons to discount Ms. Wolber's opinion may exist, the ALJ did not cite any. On remand, the ALJ shall reconsider the entirety of Ms. Wolber's opinion (AR at 803-04) and either account for it or provide specific and legitimate reasons to discount it.

### VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 23rd day of October, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge